

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HENRY MACASIO MALINAY and MARILYN CORPUZ MALINAY,<br><br>Debtors. | Case No. 15-00044<br>Chapter 13 |
| STATE OF HAWAII, by its OFFICE OF CONSUMER PROTECTION,<br><br>Plaintiff,<br><br>vs.<br><br>HENRY MACASIO MALINAY,<br><br>Defendant. | Adv. Pro. No. 15-90017<br><br>Related Docket No. 11 |

FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff State of Hawaii Office of Consumer Protection's Motion for Summary

Judgment, filed April 22, 2015 (the "Motion"), came on for hearing before the

Honorable Robert J. Faris on June 19, July 17, and August 6, 2015, pursuant to

notice. James F. Evers, Esq., appeared on behalf of Plaintiff State of Hawaii Office of Consumer Protection ("OCP"), and Peter C. Hsieh, Esq., appeared on behalf of Defendant Henry Macasio Malinay ("Defendant"), who was also present.

Based on the record, there is no genuine dispute concerning the following

## FINDINGS OF FACT:

1. In May 2012, the holder of a mortgage on the residence of Henry Malinay and his wife sued to foreclose the mortgage.

2. In early July of 2013, the Malinays attempted to save their property from foreclosure by signing up for a service called "Mortgage Enterprise." The service, initially offered by Anthony Williams, promised that it would cut mortgage loan balances by one-half. Mortgage Enterprise supposedly accomplished this by unilaterally recording a Uniform Commercial Code financing statement. In reality, this device had no effect on the consumers' loan balances.

3. Consumers became Mortgage Enterprise clients by completing a standard packet of forms and paying a fee in advance. Mr. Williams waived the fee for the Malinays because Mr. Malinay had agreed to refer prospective clients to Mortgage Enterprise in exchange for referral fees.

4. On July 15, 2013, the Malinays attended a hearing in the foreclosure action on their lender's motion for summary judgment. Mr. Williams represented the Malinays at the hearing. Mr. Williams held himself out as a "private attorney general."

U.S. Bankruptcy Court - Hawaii   #15-90017   Dkt # 53   Filed  09/03/15   Page 2 of 15

The court granted the lender's motion.

5. Based on the outcome of the hearing, Mr. Malinay admittedly realized that very same day, July 15, 2013, that the Mortgage Enterprise mortgage reduction service was a fraud. He knew that Mr. Williams had misled them about the service, their mortgage balance had not been cut in half, the service had conferred no benefit upon them, and Mr. Williams was not even an attorney.

6. Even though he admittedly knew that Mortgage Enterprise was a fraud, Mr. Malinay thereafter played a prominent role in the fraudulent mortgage reduction scheme. He persuaded consumers to become Mortgage Enterprise clients and pay for the phony mortgage reduction service. He targeted Ilocano-speaking members of the Filipino community as prospective clients, distributed the Mortgage Enterprise forms to consumers, and collected from consumers their completed forms together with their advance payments. In return, Mr. Malinay received referral fees.

7. Mr. Williams spent nine months in prison beginning on September 13, 2013. While Mr. Williams was incarcerated, Mr. Malinay continued to run the scheme, depositing the consumers' checks into bank accounts that he controlled.

8. The following table lists the consumers whom Mr. Malinay induced to pay money to the Mortgage Enterprise scheme and who complained to OCP, and the amount each of them paid. Each of these consumers paid for the service after July 15, 2013, *i.e.*, after Mr. Malinay knew the service was a fraud.

3

U.S. Bankruptcy Court - Hawaii    #15-90017    Dkt # 53    Filed  09/03/15    Page 3 of 15

| Consumer | OCP Case No. | Payment |
|---|---|---|
| Sally Haber Pico | 2014-972 | $2,900 |
| Rodrigo Simon | 2014-335 | $3,900 |
| Hilaria F. Taborada | 2014-300 | $4,000 |
| Romeo Lopez | 2014-795 | $3,400 |
| Prima Gijal | 2013-675 | $2,450 |
| Marites C. Quedding | 2013-673 | $2,950 |
| Margarita Barut | 2013-748 | $1,500 |
| Reina M. Mata & Robert Mata | 2014-816 | $3,100 |
| Ceasar Lizada & Luz Lizada (re East Lipoa St.) | 2014-321A | $4,300 |
| Ceasar Lizada & Luz Lizada (re Huaka St.) | 2014-321B | $4,000 |
| Froilan Lagazo | 2014-304 | $3,500 |
| Rudy Gazmen & Bessie Gazmen | 2014-760 | $4,500 |
| Loreto B. Callos & Jusepina B. Callos | 2014-302 | $3,300 |
| Loreto B. Callos & Clarita R. Callos | 2014-320 | $5,500 |
| Felicitas C. Pasion | 2014-765 | $4,300 |

| | | |
|---|---|---|
| Elvira Y. Andaya & Larry C. Andaya Sr. | 2015-49 | $4,050 |
| Nelia A. Fabella | 2014-825 | $4,050 |
| Gudencia Simon & Herminio Simon | 2014-431 | $3,900 |
| Rosario L. Kalb | 2014-287 | $3,900 |
| Antonio Palacio & Enriqueta Palacio | 2014-430 | $4,500 |

9. Mr. Malinay represented, orally and through the forms he delivered to consumers, that the Mortgage Enterprise scheme was effective, legitimate, and risk-free and had a 100% success rate in cutting consumers' mortgage debts in half.

10. Mr. Malinay knew, from personal experience, that these representations were false. He never told any of the consumers that the Mortgage Enterprise had not reduced his mortgage balance by half or that it could not reduce anyone's mortgage balance by half.

11. Mr. Malinay made these false representations for the purpose of deceiving the consumers. He wanted the consumers to sign up for the Mortgage Enterprise scheme so he could receive referral fees.

12. Consumers justifiably relied to their detriment upon Mr. Malinay's representations. The consumers did not know and, as relatively unsophisticated

5

consumers had no reason to suspect, that the representations were false.

13. Mr. Malinay's misrepresentations proximately caused the consumers to suffer damage. At a minimum, the consumers lost the fees they paid for the useless "service."

14. On January 15, 2015 ("Petition Date"), Mr. and Mrs. Malinay filed a voluntary petition seeking relief under Chapter 13.

Based on these findings of fact, I draw the following

## CONCLUSIONS OF LAW

### I. Jurisdiction and Venue

1. The bankruptcy court has personal and subject matter jurisdiction. The bankruptcy court has statutory and constitutional power to enter a final judgment in this adversary proceeding. Venue is proper in this district.

2. The bankruptcy court has the power to determine whether OCP's claims are dischargeable and to enter judgment on those claims,[1] including monetary and injunctive relief.[2]

### II. OCP's Standing

3. OCP has standing to assert the claims set forth in this adversary

---

[1] *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038 (9th Cir. 2014); *Stanbrough v. Valle (In re Valle)*, 469 B.R. 35 (Bankr. D. Idaho 2012).

[2] *Idaho v. Edwards (In re Edwards)*, 233 B.R. 461, 478-79 (Bankr. D. Idaho 1999).

6

U.S. Bankruptcy Court - Hawaii   #15-90017   Dkt # 53   Filed  09/03/15   Page 6 of 15

proceeding. State law authorizes OCP to investigate reported or suspected violations of laws enacted and rules adopted for the purpose of consumer protection, and to enforce such laws and rules by bringing civil actions or proceedings. OCP also has statutory authority to obtain restitution on behalf of consumers[3] and to obtain injunctive relief to enjoin any unlawful act or practice affecting consumers, trade, or commerce.[4]

4.  Based upon its statutory authority to pursue and enforce claims on behalf of consumers, OCP has authority to bring suit seeking a determination of nondischargeability on its own behalf as well as on behalf of consumers.

### III. Summary Judgment Standard

5.  Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial.[6] In making this determination, the court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in favor of the

---

[3] Haw. Rev. Stat. § 487-14 .

[4] *Id.* § 487-15.

[5] Fed.R.Civ.P. 56(a), Fed. R. Bankr.P. 7056; *see also Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008).

[6] *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).

U.S. Bankruptcy Court - Hawaii   #15-90017   Dkt # 53   Filed 09/03/15   Page 7 of 15

nonmoving party.

6. Mr. Malinay argues that the court should deny OCP's motion for summary judgment and permit Mr. Malinay to conduct additional discovery. Mr. Malinay hopes to show that he was only one participant, and not the most important participant, in the Mortgage Enterprise scheme.

7. The court may deny or defer a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ."[7]

8. Mr. Malinay's arguments do not support a denial or deferment of OCP's motion. A continuance is improper unless the desired evidence would warrant the denial of summary judgment.[8] In a sworn deposition, Mr. Malinay admitted that he knew that Mortgage Enterprise was a fraud but that he nevertheless continued to refer clients to the scheme and to collect referral fees for doing so. The fact that other people participated in the scheme, or that Mr. Malinay was initially a victim of the scheme, cannot constitute a defense. Mr. Malinay cannot avoid the consequences of

---

[7] Fed. R. Civ. P. 56(d), made applicable by Fed. R. Bankr. P. 7056.

[8] *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 939 (9th Cir.2002); *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir.1994); *Barona Grp. of the Capitan Grande Band of Mission Indians v. Am. Mgmt. & Amusement, Inc.*, 840 F.2d 1394, 1400 (9th Cir.1988); *Continental Maritime v. Pacific Coast Metal Trades*, 817 F.2d 1391, 1395 (9th Cir.1987); *Maljack Prods. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 888 (9th Cir.1996).

U.S. Bankruptcy Court - Hawaii   #15-90017   Dkt # 53   Filed 09/03/15   Page 8 of 15

his personal misconduct by inculpating others.[9]

9. Further, Mr. Malinay has not even offered his own declaration in an attempt to support his theory. Any such attempt would be unavailing; the fact that Mr. Malinay continued to operate and profit from the scheme while Mr. Williams was in prison further establishes that Mr. Malinay was hardly a passive participant or unknowing dupe.

## IV. "Debt"

10. Section 523 of the Bankruptcy Code provides that certain kinds of "debt" are not dischargeable in bankruptcy. "Debt" means "liability on a claim,"[10] and a "claim" is a "right to payment."[11] In other words, OCP must show that Mr. Malinay has a legal obligation to pay money to OCP.

11. Mr. Malinay committed common law fraud under Hawaii law. The elements of common law fraud are identical in substance to those under section 523(a)(2). The plaintiff must prove by clear and convincing evidence that the defendant (1) made false representations of material fact, intended to induce the consumers to act, (2) the representations were made with knowledge of, or reckless disregard for, their falsity, and (3) the consumers justifiably relied upon those false

---

[9] *Britton v. Price (In re Britton)*, 950 F.2d 602, 604-05 (9th Cir.1991).

[10] 11 U.S.C. § 101(12).

[11] *Id.* § 101(5).

U.S. Bankruptcy Court - Hawaii   #15-90017   Dkt # 53   Filed  09/03/15   Page 9 of 15

representations to their detriment.[12] The consumers must have suffered substantial pecuniary damage caused by reliance on Mr. Malinay's statements.[13]

12. OCP has satisfied its burden of proving that Mr. Malinay committed common law fraud under Hawaii law. Mr. Malinay received referral fees from each consumer who complained to the OCP, ranging from $1,500 to $5,550, based on Mr. Malinay's representations that the Mortgage Enterprise scheme was legitimate and effective, despite his knowledge that it was a scam. Because Mr. Malinay fraudulently obtained the referral fees, the consumers have valid claims against Mr. Malinay.

13. Mr. Malinay also violated an important Hawaii consumer protection statute. Haw. Rev. Stat. § 480-2(a) forbids "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." A consumer victimized by such a practice may recover damages.[14] Thus, a violation of section 480-2 gives rise to a debt.

14. "A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."[15] Mr. Malinay's conduct violated the established public policy against

---

[12] *Bulgo v. Munoz*, 853 F.2d 710, 716 (9th Cir. 1988).

[13] *Id.*

[14] Haw. Rev. Stat. § 480–13(b).

[15] *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000).

U.S. Bankruptcy Court - Hawaii   #15-90017   Dkt # 53   Filed  09/03/15   Page 10 of 15

fraudulent mortgage rescue schemes.[16] Likewise, Mr. Malinay's lies were undoubtedly immoral, unethical, oppressive, unscrupulous, *and* substantially injurious to consumers.

15. "A deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.' " This inquiry is objective—the test is whether the practice was "capable of misleading a reasonable consumer." There need not be an intent to deceive nor actual deceit.[17] Mr. Malinay's conduct was undoubtedly "deceptive" within this definition.

## V. Section 523(a)(2)

16. A chapter 7 discharge does not discharge an individual from any debt for money to the extent that the debtor obtained it by "false pretenses, a false representation, or actual fraud . . . ."[18] The plaintiff must prove five elements by a preponderance of the evidence:

(i) Misrepresentation, fraudulent omission, or the debtor's deceptive conduct;

(ii) Knowledge of the falsity or deceptiveness of his statement or conduct;

---

[16] *See* Haw. Rev. Stat. § 480E-1--12; 12 C.F.R. Part 1015 (the "MARS Rule").

[17] *Kekauoha-Alisa v. Ameriquest Mortgage Co. (In re Kekauoha-Alisa)*, 674 F.3d 1083, 1091 (9th Cir. 2012)

[18] 11 U.S.C. § 523(a)(2)(A).

11

U.S. Bankruptcy Court - Hawaii   #15-90017   Dkt # 53   Filed  09/03/15   Page 11 of 15

(iii) An intent to deceive;

(iv) Justifiable reliance by the creditor on the debtor's statement or conduct; and

(v) Damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.[19]

17. Exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the Code's goal of giving debtors a fresh start.[20]

18. The plaintiff can establish that a debtor engaged in a fraudulent omission if he proves that, first, there was a duty to disclose a material fact; second, the debtor did not disclose that fact; and, third, the debtor's omission was motivated by an intent to deceive.[21]

19. The Supreme Court has held that the common law in force when section 523 was passed and the Restatement (Second) of Torts should guide courts' interpretation of section 523(a)(2)(A).[22] Following that direction, the Ninth Circuit

---

[19] *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009).

[20] *Caneva v. Sun Communities Operating Limited Partnership (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008).

[21] *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996); *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 n. 4 (9th Cir. 2001) ("A debtor's failure to disclose material facts constitutes a fraudulent omission under § 523(a)(2)(A) if the debtor was under a duty to disclose and the debtor's omission was motivated by an intent to deceive.") (citing *Eashai*, 87 F.3d at 1089-90).

[22] *Field v. Mans*, 516 U.S. 59, 70 (1995); *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1323-24 (9th Cir. 1996).

U.S. Bankruptcy Court - Hawaii   #15-90017   Dkt # 53   Filed  09/03/15   Page 12 of 15

has relied on the Restatement when discussing the duty to disclose.[23]

20.     Section 551 of the Restatement explains that a party to a business transaction has a duty to disclose the following facts once the transaction is consummated:

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
>
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

21.     OCP has satisfied its burden of proving all of the elements necessary to have the consumers' claims for restitution declared nondischargeable under section 523(a)(2)(A). Mr. Malinay knew that Mortgage Enterprise could not deliver the mortgage reduction that it promised. He kept silent about his knowledge and continued to refer consumers to the scheme so he could put money in his pocket.

---

[23] *Eashai*, 87 F.3d at 1089; *Apte*, 96 F.3d at 1323-24.

13

U.S. Bankruptcy Court - Hawaii    #15-90017    Dkt # 53    Filed  09/03/15    Page 13 of 15

VI. Remedies.

22. Because the Mortgage Enterprise scheme violated section 480-2, the consumers are entitled to the return of their money. Thus, the consumers' claims for restitution, totaling $74,000, are nondischargeable.

23. Mr. Malinay's liability includes the consumers' entire loss, and is not limited to the referral fees he reeived, Section 523(a)(2)(A) prevents the discharge of all liability arising from fraud and is not limited to the amount of benefit received by the debtor.[24]

24. OCP is also entitled to fines and penalties.[25]

25. In light of the egregiousness of the scheme and of Mr. Malinay's involvement in it, OCP's request for noncompensatory fines and penalties totaling $200,000, calculated at $10,000 per OCP complaint, is reasonable and appropriate.

26. OCP's claim for noncompensatory fines and penalties totaling $200,000 is nondischargeable.[26]

27. The permanent injunctive relief requested by OCP is also warranted.

## CONCLUSION

Counsel shall submit a proposed judgment in favor of OCP and against Mr.

---

[24] *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998).

[25] HRS § 480-3.1.

[26] 11 U.S.C. § 523(a)(7).

14

U.S. Bankruptcy Court - Hawaii   #15-90017  Dkt # 53  Filed  09/03/15  Page 14 of 15

Malinay for the relief granted above.

## END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

15

U.S. Bankruptcy Court - Hawaii    #15-90017    Dkt # 53    Filed  09/03/15    Page 15 of 15